1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JEFFREY HUTCHINGS,<br><br>                                    Petitioner,<br><br>v.<br><br>RALPH DIAZ, Warden, et al.,<br><br>                                    Respondents. | Civil No.        13cv1149 BEN (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## INTRODUCTION

William Jeffrey Hutchings (hereinafter "Petitioner") is a state prisoner proceeding *pro se,* with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  [ECF No. 1.]  A jury convicted Petitioner of one count of conspiracy to commit grant theft, 65 counts of grand theft, 41 counts of deceitful practices by a mortgage foreclosure consultant and 56 counts of rent skimming.  [Lodgment 7 at 1.] The San Diego Superior Court sentenced Petitioner to a prison term of 46 years. [Lodgment 7 at 2.]  Hutchings presents the following claims in his federal petition: (1) the trial court abused its discretion in denying a defense motion for partial release of assets; (2) the trial court erred in denying a defense motion for mistrial following alleged juror misconduct; (3) the trial court erred in denying admission of defense

1   evidence and unfairly influenced the jury by providing candy to its members each day;

2   (4) trail counsel was ineffective by failing to investigate, failing to introduce certain

3   evidence, failing to call expert witnesses, failing to object to evidence and failing to

4   request a rehearing on a motion for mistrial; (5) the trial court erred by imposing

5   consecutive sentences; and (6) the trial court erred by denying Petitioner's "land grant

6   program" jury instruction. [ECF No. 1 at 25-26.]

7       Respondent has filed an Answer to the Petition, along with an incorporated

8   Memorandum of Points and Authorities in support, and has lodged portions of the

9   state court record.  (ECF Nos. 11-13.)  Respondent contends that federal habeas relief

10  is not available because Claims one through three, five and six are procedurally

11  defaulted.  Respondent also argues Petitioner's fourth claim for ineffective assistance

12  of counsel has no merit.

13      After receiving an extension of time in which to file a traverse, Petitioner filed

14  his Traverse to Respondent's Answer on December 20, 2013. [ECF Nos. 19, 20 and

15  22.]

16      This Report and Recommendation is submitted to United States District Judge

17  Roger T. Benitez pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the

18  United States District Court for the Southern District of California.  For the following

19  reasons, the Court recommends a finding that Petitioner is not entitled to habeas relief

20  because: (1) Claims one through three, five and six are procedurally defaulted and

21  without merit and (2) Petitioner has not met his burden under *Strickland* v.

22  *Washington* to demonstrate ineffective assistance of trial as alleged in Claim four.

23  Accordingly, the Court **RECOMMENDS** the Petition be **DENIED**.

## II.

## STATE PROCEEDINGS

26      On March 23, 2010, a jury found Petitioner guilty of one count of conspiracy to

27  commit grand theft, 65 counts of grand theft, 41 counts of deceitful practices by a

28  mortgage foreclosure consultant and 56 counts of rent skimming. [Lodg. No.  2 at 3

CT 482; 5 CT 916-918.]   Petitioner filed an appeal on May 27, 2010 contending the trial court violated the Sixth and Fourteenth Amendments of the Constitution by inserting the concept of reasonableness into the jury instruction for mistake of fact. [Lodg. No. 4 at 4; Lodg. No. 7 at 2.]  On October 18, 2011, the California Court of Appeal affirmed the judgment.  [Lodg. No. 7.]  On November 21, 2011, Hutchings filed a Petition for Review on the same ground raised in his appeal which was denied by the California Supreme Court on January 4, 2012. [Lodg. Nos. 8-9.]

On February 28, 2012, Hutchings filed a Petition for Writ of Habeas Corpus in the California Superior Court for the County of San Diego alleging: (1) the trial court erred in denying petitioner's proposed "land grant program" jury instruction; (2) the trial court erred in denying a defense motion for mistrial in light of prejudicial comments by the jury panel; (3) the trial court erred in denying admission of defense evidence and improperly influenced the jury; (4) ineffective assistance of trial counsel; and (5) the trial court erred in imposing consecutive sentences rather than concurrent sentences.  Lodg. No. 10 at 1-24.  On March 28, 2012, the San Diego Superior Court issued an Order denying Hutchings' Petition for Writ of Habeas Corpus for "fail[ing] to provide **any** evidence to substantiate any of the five grounds [Petitioner] raise[d] as reasons to grant th[e] petition.]" [Lodg. No. 11 at 3:13-14] (emphasis in original).  The San Diego Superior Court also indicated:

> "the **second** reason [for the denial of Hutchings' Petition] is that the general rule is a petition for writ of habeas corpus cannot serve as a substitute for an appeal, and matters that 'could have been, but were not, raised on a timely appeal from a judgment of conviction' re not cognizable on a petition for habeas corpus review, in the absence of special circumstances warranting a departure from that rule.  *In re Clark* (1993) 5 Cal. 4th 750, 765 (quoting *In re Dixon* (1953) 41 Cal. 2d 756, 759).  Moreover, 'in this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him.'  *Id*. at 768."

Lodg. No. 11 at 3:23-4:1. (emphasis in original).

On May 12, 2012, Hutchings filed a Petition for Writ of Mandate in the

California Court of Appeal requesting a hearing and an order for the release of discovery. [Lodg. No. 12.]   The Court of Appeal denied the petition without comment on July 3, 2012. [Lodg. No. 13.]

On July 17, 2012, Hutchings filed a Petition for Writ of Mandate in the California Supreme Court requesting a hearing and an order for the release of discovery. [Lodg. No. 14.]  On July 30, 2012, the state supreme court transferred the petition to the state appellate court to determine whether it was repetitious and should be denied under *Hagan v. Superior Court*, 57 Cal. 2d 767 (1962). [Lodg. No. 15.] After review, the state appellate court found the Petition for Writ of Mandate filed with the state supreme court was substantially similar to the earlier-filed petition in the state appellate court.  Accordingly, the state appellate court denied the Petition for Writ of Mandate on August 6, 2012.  [Lodg. No. 20.]

On August 20, 2012, Hutchings filed a Petition for review in the California Supreme Court challenging the denial of his request for a hearing and discovery. [Lodg. No. 17.]  The state supreme court denied the petition without comment on September 26, 2012. [Lodg. No.18.]

On December 6, 2012, Hutchings filed a Petition for Writ of Habeas Corpus with the California Court of Appeal alleging: (1) the trial court abused its discretion in denying a defense motion for partial release of assets; (2) the trial court erred in denying a defense motion for mistrial in light of prejudicial comments by the jury panel; (3) the trial court erred in denying admission of defense evidence and improperly influenced the jury; (4) ineffective assistance of trial counsel; (5) the trial court erred in imposing consecutive sentences rather than concurrent sentences; and (6) the trial court erred in denying petitioner's proposed "land grant program" jury instruction. [Lodg. No. 19.]  On February 7, 2013, the California Court of Appeal denied the petition for Hutchings' failure to raise the issues on direct appeal citing *In re Seaton*, 34 Cal. 4th 192, 199-201 (2004), as well as the failure to explain why he could not raise the issues at an appropriate earlier time citing *In re Harris*, 5 Cal. 4th

813, 825, fn.3 (1993) and *In re Robbins*, 18 Cal. 4th 770, 778 (1998).  [Lodg. No. 16.]
The state appellate court also denied the petition for Hutchings' failure to demonstrate
he "sought habeas relief on these grounds from the superior court in the first instance"
citing *In re Steele*, 32 Cal. 4th 682, 692 (2004) and *In re Hillery*, 202 Cal. App. 2d 293,
294 (1962).

On March 6, 2013, Hutchings filed a Petition for Writ of Habeas Corpus in the
California Supreme Court alleging the same six issues previously raised with the state
appellate court: (1) the trial court abused its discretion in denying a defense motion for
partial release of assets; (2) the trial court erred in denying a defense motion for
mistrial in light of prejudicial comments by the jury panel; (3) the trial court erred in
denying admission of defense evidence and improperly influenced the jury; (4)
ineffective assistance of trial counsel; (5) the trial court erred in imposing consecutive
sentences rather than concurrent sentences; and (6) the trial court erred in denying
petitioner's proposed "land grant program" jury instruction.  [Lodg No. 21.]  On May
1, 2013, the state supreme court denied the petition citing *People v. Duvall*, 9 Cal. 4th
464, 474 (1995); *In re Dixon* 41 Cal. 2d. 756, 759 (1953) and *In re Swain*, 34 Cal. 2d
300, 304 (1949).  Lodg. No. 22.

On May 13, 2013, Hutchings filed a federal Petition for Writ of Habeas Corpus
which alleges the same six issues previously raised with the state appellate and state
supreme courts.  [ECF No. 1.]

### III.

### FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to
be correct.  See 28 U.S.C. § 2254(e)(1).  *See also Parke v. Raley*, 506 U.S. 20, 35-36
(1992) (holding findings of historical fact, including inferences drawn from such

///

///

facts, are entitled to a statutory presumption of correctness).  The relevant facts found by the state appellate court are as follows:

"Prosecution

>Beginning in 2006, Hutchings commenced a purported federal land grant program promising to save homeowners facing foreclosure from losing their homes.  He promoted the program with the following assertions: (1) the United States agreed to honor the land grants issued by the governments of Spain and Mexico in 1848 in the treaty of Hidalgo, through which the United States acquired California as a territory; (2) when California became a state in 1850, it issued patents to the land owners to protect their respective titles in real property under federal and California law; (3) because the land and the structure upon the land were separate entities, a homeowner facing foreclosure could defeat the mortgage by (a) placing the land back under federal control in a "federal land grant program" mimicking the treaty of Hidalgo and (b) waiting four to seven years, at which time the house would revert to the title holder free and clear of any mortgage when the bank wrote off the loan or the statute of limitations expired.

>Hutchings and/or his representatives provided manuals and seminar presentations assuring homeowners the land grant was superior to any other forms of title and prohibited the bank from enforcing its loan, trespassing on the property, initiating eviction proceedings, or taking any action to defeat the homeowner's possession of the house permanently affixed to the land.

>Hutchings and his representatives promised to prepare and file the deeds and other necessary paperwork, guarantee legal assistance throughout the process, and forward any paperwork from the mortgagee, including any notice of default, eviction, and sale.

>Hutchings's program operated in two different ways.  Homeowners would be charged a $10,000 one time fee for the service, with the fee for any additional property discounted.  In the alternative, delinquent homeowners paid one of Hutchings's companies or a designee the market lease rate for the particular property in a purported fee and lease arrangement.  Under the purported leaseback arrangement, homeowners were told they retained an equity share in the property, ranging from 10 to 50 percent, and had an option to purchase the balance once the land program was completed.  The resulting documentation, however, showed the homeowner ceded all interest in the property to one of Hutchings's companies.

>Once eviction proceedings commenced, Hutchings did not provide any legal assistance to the homeowners and sometimes advised the homeowners to simply ignore the foreclosure proceedings.  Moreover, homeowner's further attempts to communicate with Hutchings and/or his representatives failed.

>Michael Dullea, an expert witness for the people, explained Hutchings made the following false representations in a seminar promoting his land grant program.  The federal government owns the land in California (including the homeowner's properties) through its right of eminent domain.  The federal government owns the land in California (including the homeowner's properties) because it was taken in the war with Mexico.  A mortgage only provides ownership of the house, not the land.  Once Land Services, LLC gets the grant

deed, it starts the process of setting up a federal land grant. People have been putting property in federal land grants for 200 years. Because the federal government owns the land, neither the banks (mortgagees) nor the homeowners (mortgagors) own the land. The bank does not really own the home it acquires by virtue of a trustee's deed upon sale. The mortgagor (borrower) can end the mortgage by giving away the deed of trust. The mortgage disappears four years after the deed of trust is given away. Giving away the trust deed before the foreclosure sale stops the foreclosure sale and the enforcement of the lien. Banks will try to prove Hutchings's leaseback and purchase is a sham if the full market rent has not been paid. A home subject to foreclosure cannot be sold because of the land grant. The postforeclosure sale eviction may only be temporary. Once the bank writes off the mortgage, Hutchings's companies transfer the property out of the land grant and terminate the agreement with the homeowner.

Neither Hutchings nor his representatives ever told homeowners entering the program about the foreclosures the program had failed to avert. Further, none of the documents provided by Hutchings's program and signed by the victims thwarted foreclosure or conveyed title in the manner represented by Hutchings or his associates, and none of the victims retained possession of their homes or avoided foreclosure by virtue of Hutchings's program.

In all but three instances involving partial refunds, Hutchings and his representatives broke their promise that any and all monies paid for the land grant program would be refunded if the program did not work. Forensic reconstruction of bank records from January 2007 through June 2008 showed approximately $2 million passed through bank accounts controlled by Hutchings, the majority of the money coming from individuals and money orders. Of that amount, $275,000 was directly traceable from 64 individuals. Disbursements from the accounts showed a total of $411,000 tranferred to Canadian banks. Only one check was found for attorney fees, in the amount of $5,000. Over $50,000 was traced to a mortgage company, the monies representing accelerated payments on the mortgage on Hutchings's primary residence, the title to which was held in Hutchings's wife's name. The title history on the property revealed it was not in danger of default, and it was not placed in Hutchings's program. Search warrants executed at Hutchings's office and home yielded a number of files, including a compensation agreement, a copy of the Civil Code section on rent skimming, and a Bureau of Land Management declaration that land patent declarations have no legal effect and cannot thwart foreclosure.

Defense

Testifying on his own behalf, Hutchings claimed, based upon the law and his research, the program he offered was valid, he had no intent to defraud, and he did not violate the foreclsure consultant law or any other law. Other defense witnesses testified to Hutchings's good character."

[*See* Lodg. No. 7 at 2-6.]

**IV.**

**PETITIONER'S CLAIMS**

The Petition presents the following claims:

(1) the trial court abused its discretion in denying a defense motion for partial release of assets;

(2) the trial court erred in denying a defense motion for mistrial following alleged juror misconduct;

(3) the trial court erred in denying admission of defense evidence and unfairly influenced the jury by providing candy to its members each day;

(4) trial counsel was ineffective by failing to investigate, failing to introduce certain evidence, failing to call expert witnesses, failing to object to evidence and failing to request a rehearing on a motion for mistrial;

(5) the trial court erred by imposing consecutive sentences; and

(6) the trial court erred by denying Petitioner's "land grant program" jury instruction.

[ECF No. 1 at 25-26.]

**V.**

**DISCUSSION**

**A.    Scope of Review**

      **1.    Federal Habeas Relief**

This action was initiated after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

1

Federal law, as determined by the Supreme Court of the United States; or

2

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C.A. § 2254(d) (West 2006).

5

6

A state court's decision may be "contrary to" clearly established Supreme Court

7

precedent (1) "if the state court applies a rule that contradicts the governing law set

8

forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are

9

materially indistinguishable from a decision of [the] Court and nevertheless arrives at

10

a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362,

11

405-06 (2000). A state court decision may involve an "unreasonable application" of

12

clearly established federal law, "if the state court identifies the correct governing legal

13

rule from this Court's cases but unreasonably applies it to the facts of the particular

14

state prisoner's case." *Id.* at 407. A decision may also involve an unreasonable

15

application "if the state court either unreasonably extends a legal principle from

16

[Supreme Court] precedent to a new context where it should not apply or

17

unreasonably refuses to extend that principle to a new context where it should apply."
*Id.*

18

19

"[A] federal habeas court may not issue the writ simply because the court

20

concludes in its independent judgment that the relevant state-court decision applied

21

clearly established federal law erroneously or incorrectly. . . . Rather, that application

22

must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)

23

(internal quotation marks and citations omitted). Clearly established federal law

24

"refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's

25

decisions . . ." *Williams*, 529 U.S. at 412. In order to satisfy section 2254(d)(2), a

26

federal habeas petitioner must demonstrate that the factual findings upon which the

27

state court's adjudication of his claims rest, assuming it rests upon a determination of

28

the facts, are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011). The Supreme Court has stated that "[i]f this standard is difficult to meet, that is because it was meant to be . . . [as it] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with this Court's precedents." *Id.* at 786 ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.") (internal quotation marks omitted).

## 2.   Procedural Default

Respondent contends all but one[1] of Petitioner' s federal claims are procedurally defaulted, which is an affirmative defense based on the petitioner's failure to satisfy a state law rule that in turn forecloses federal habeas review. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("Federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment' "), *quoting Coleman v. Thompson*, 501 U.S. 722, 719 (1991). If the state court's decision

---

[1]  At footnote 3 of Respondent's Memorandum of Points and Authorities in support of its Answer, Respondent asserts Hutchings' fourth claim for ineffective assistance of counsel is <u>not</u> procedurally defaulted because the Ninth Circuit prefers <u>not</u> to address ineffective assistance claims on direct appeal stating: a "more appropriate way to pursue this…claim is by way of a …proceeding" in which "a record may be developed to show what counsel did and resulting prejudice." *United States v. Simas*, 937 F.2d 459, 463 (9th Cir. 1991); *United States v. Hanoum*, 33 F.3d 1128 (9th Cir. 1994). *See e.g. United States v. Quintero-Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995) (explaining issues that rely on evidence outside the record cannot be raised on direct appeal.)  Accordingly, claims of ineffective assistance of counsel usually cannot be raised on direct appeal because such claims require evidence not already in the record. *See Hanoum*, 33 F.3d at 1347.

does not clearly rest on an independent and adequate state ground, it is presumed the denial was based at least in part on federal grounds, and the petitioner may seek relief in federal court. *Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir. 1994).

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) "a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement," and (2) "the state judgment rests on independent and adequate state procedural grounds." ' " *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012), *quoting Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011) (parallel citations omitted) (*quoting Coleman*, 501 U.S. at 729-730).

The procedural default rule has four requirements: (1) the petitioner actually violated a state procedural rule; (2) the procedural violation is "adequate" (i.e., consistently applied) and "independent" (i.e., independent of federal law); (3) the decision of the last state court presented with the federal claim clearly and expressly relied on such a ground; and (4) the state timely argues procedural default. *Siripongs*, 35 F.3d at 1317-18.

When the procedural default bar is invoked, the burden then shifts to the petitioner to place that defense in issue "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure." *Bennett*, 322 F.3d at 586. If the petitioner makes a sufficient showing, Respondent has the ultimate burden to prove the affirmative defense. *Id.*

Hutchings raised the following six issues in his state habeas petitions:

(1) the trial court abused its discretion in denying a defense motion for partial release of assets;
(2) the trial court erred in denying a defense motion for mistrial following alleged juror misconduct;
(3) the trial court erred in denying admission of defense evidence and unfairly influenced the jury by providing candy to its members each day;
(4) trial counsel was ineffective by failing to investigate, failing to introduce certain evidence, failing to call expert witnesses, failing to object to evidence and failing to request a rehearing on a motion for mistrial;
(5) the trial court erred by imposing consecutive sentences; and
(6) the trial court erred by denying Petitioner's "land grant program" jury instruction.

The state appellate court and the state supreme court rejected these claims for failure

to raise them on direct appeal.  [Lodg. No. 16 and Lodg. No. 22.]  Specifically, in

denying Hutchings' Petition for Writ of Habeas Corpus, the California Supreme Court

cited *People v. Duvall*, 9 Cal. 4th 464, 474 (1995); *In re Dixon* 41 Cal. 2d. 756, 759

(1953) and *In re Swain*, 34 Cal. 2d 300, 304 (1949). [Lodg. No. 22.]  Under *Duvall*, a

habeas corpus petition must "i) state fully and with particularity the facts on which

relief is sought, as well as (ii) include copies of reasonably available documentary

evidence supporting the claim, including pertinent portions of trial transcripts and

affidavits.  Conclusory allegations made without any explanation of the basis of the

allegations do not warrant relief,...[T]he burden is on the petitioner to establish

grounds for his release." *Id.* at 474 (internal citations and quotations omitted).  The

citation to *Duvall* indicates the state supreme court denied the petition based in part on

Petitioner's failure to plead a prima facie case for relief.  The state supreme court also

cited *In re Dixon*, 41 Cal.2d 756, 759 (1953).  Under *In re Dixon,* the failure to raise a

claim on direct appeal which could and should have been raised constitutes a

procedural bar to collateral consideration of the claim.  *See Beard v. Kindler*, 2009

WL 4573277 *5 (U.S. Supreme Court (12/8/09) (a discretionary state procedural rule

can serve as an adequate ground to bar federal habeas review).  Finally, the state

supreme court also cited a portion of *In re Swain* which refers to the need for a

petitioner to provide sufficient information in the petition to warrant relief and

indicates the state supreme court's decision is "not a ruling on the merits of the issues

which petitioner has attempted to raise."   *In re Swain*, 34 Cal. 2d at 304.

        Respondent has asserted that the state supreme court's ruling constitutes an

adequate and independent state bar, precluding federal habeas review. [ECF No. 11,

Respondent's Answer at 2.]  "Once the state has adequately pled the existence of an

independent and adequate state procedural ground as an affirmative defense, the

burden to place that defense in issue shifts to the petitioner." *Bennett v. Mueller*, 322

F.3d 573, 586 (9th Cir. 2003) (petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule").  As noted above, Respondent has properly raised the affirmative defense.  However, Hutchings fails to carry his shifted burden because he has not argued the state procedural bar is inadequate or inconsistently applied.

### a. Cause and Prejudice to Overcome Procedural Default

Even when a federal claim has been procedurally defaulted, "[t]he bar to federal review may be lifted, if 'the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law.' "  *Maples v. Thomas,* 132 S.Ct. 912, 922 (2012)(*quoting Coleman*, 501 U.S. at 750, 746-47); *see also Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (same).  Adequate "cause" for a default must be an "external" factor that cannot fairly be attributed to the petitioner.  *Coleman*, 501 US. at 753.  The Supreme Court has recognized that ineffective assistance of counsel may satisfy the cause requirement necessary to overcome a procedural default.  *See Murray v. Carrier,* 477 U.S. 478, 488 (1986).  In his federal Petition, Hutchings claims any default should be excused because his court-appointed appellate counsel failed to include on direct appeal the very same claims he has raised in his current federal petition even though he asked her to present them on direct appeal.  [ECF No. 1 at 14-15.]

In *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986), the Supreme Court explained the potential satisfaction of the cause requirement through a claim of ineffective assistance of counsel as follows:

> "Although we have not identified with precision exactly what constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing to properly preserve the claim for review in state court will suffice.  Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution.  In other words, ineffective assistance adequate to establish cause for procedural default of some other constitutional claim is itself an independent constitutional claim.  And we held in *Carrier* that

13cv1149

1

2

the principles of comity and federalism that underlie our longstanding exhaustion doctrine ... require that constitutional claim, like others, to be first raised in state court. "

3

4

*Carrier,* 477 U.S. at 489.

5

6

7

8

9

10

11

12

13

Hutchings did raise the issue of ineffective assistance of his appellate counsel in his state habeas petition filed February 28, 2012. [Lodg. No. 10.]  The superior court rejected Hutchings' ineffective assistance of appellate counsel claim finding Hutchings failed to demonstrate any prejudice resulting from appellate counsel's alleged errors. [Lodg. No. 11 at 4-5.]  To the extent Hutchings has sufficiently raised an independent claim of ineffective assistance of appellate counsel, he has nevertheless failed to meet his burden of showing his appellate counsel's failure to raise claims one through three, five and six on direct appeal constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

14

15

### 1.)  Ineffective Assistance of Appellate Counsel As Cause to Excuse Procedural Default

16

17

18

19

20

21

22

23

24

25

26

For an alleged ineffective assistance of counsel claim to constitute the requisite "cause" for a procedural default, the petitioner must satisfy both *Strickland* prongs: deficient performance and prejudice.  *See e.g. Cockett v. Ray*, 333 F.3d 938, 943-44 (9th Cir. 2003).  First, a petitioner must demonstrate his appellate counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  More specifically, Hutchings must show counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."   *Smith v. Robbins*, 528 U.S. 259, 285 (2000)  He must then show he was prejudiced by counsel's errors.  *Strickland*, 466 U.S. at 694.  To establish prejudice, Petitioner must demonstrate he would have prevailed on appeal absent counsel's errors. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

*///*

27

28

The Ninth Circuit has observed:

> [Strickland's] two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989).

As explained in the Court's analysis of the merits below, Petitioner is unable to demonstrate his appellate counsel rendered constitutionally ineffective assistance by failing to present claims one, two, three, five and six on appeal because these claims are without merit. *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001); *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991); *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980).

### 3. **Merits Analysis**

*a. Claim One - The Sixth Amendment Right to Counsel and the Trial Court's Denial of a Defense Motion for Partial Release of Assets Previously Frozen*

Hutchings contends the trial court's denial of his request for a release of funds previously frozen under California Penal Code section 186.11 violated his Sixth Amendment right to counsel because he was thereafter without the funds necessary to pay his attorneys and received a court-appointed attorney who, in his estimation, was ineffective. [Petition, ECF No. 1 at 27-32.] Petitioner only raised this Sixth Amendment claim in his habeas corpus petitions to the California Court of Appeal and California Supreme Court. (Lodg. Nos. 19 and 21.) The state appellate court rejected these claims for failure to raise them on direct appeal. [Lodg. No. 16.] The state supreme court summarily denied the habeas petition. (Lodg. No. 22.) When a state court denies a claim solely on procedural grounds clearly without reaching the merits, there is no state court decision on the issue to which deference is owed. A federal

habeas court will review "a properly raised issue" *de novo* in such circumstances. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d)" does not apply to the federal petition when the state denied post-conviction relief on procedural grounds rather than on the merits) (citation omitted). Accordingly, because there is no reasoned state court decision to which this court can defer, this court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes* v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

On February 11, 2009, Hutchings moved for a release of funds frozen under California Penal Code section 186.11 in order to pay defense counsel. [Lodg. No. 2 at 1 CT 192-209.] On February 25, 2009, the prosecution filed a response in opposition to Hutchings' motion. [Lodg. No. 2 at 2 CT 210-224.] On March 4, 2009, the trial court issued its order denying Hutchings' motion for release of funds. [Lodg. No. 2 at 5 CT 815.] Hutchings' attorneys thereafter moved to be relieved as counsel of record in light of his inability to pay for their work. [Lodg. No. 2 at 2 CT 241-242.] The Court granted the motion and appointed a public defender to represent Petitioner. [Lodg. No. 2 at 5 CT 815.]

The Supreme Court has held that the right to counsel under the Sixth Amendment includes the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). Nevertheless, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." *Wheat*, 486 U.S. at 159; *Gonzalez–Lopez*, 548 U.S. at 144, 126 S.Ct. at 2561. "[T]here are four specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have the right to be

1  represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to

2  represent the defendant; (3) an attorney with a conflict of interest; or (4) an advocate

3  (other than himself) who is not a member of the bar." *Miller v. Blacketter*, 525 F.3d

4  890, 895 (9th Cir.2008), cert. denied , 555 U.S. 1107, 129 S.Ct. 972, 173 L.Ed.2d 123

5  (2009); *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697; *see also Schell v. Witek*, 218 F.3d

6  1017, 1025 (9th Cir.2000) ( en banc ) ("The qualified right of choice of counsel

7  applies only to persons who can afford to retain counsel.").

8      Here, the record establishes Hutchings' funds were frozen under Penal Code

9  Section 186.11, which allows the court to freeze a defendant's assets to preserve them

10  for the payment of fines, restitution or other remedies pending the outcome of criminal

11  proceedings.  *See* CA Penal Code § 186.11; Lodg.  No. 2 at 2 CT 212-214.  As a

12  result, Hutchings was unable to continue to pay his chosen defense attorney.

13  However, the inability to afford the counsel one prefers does not implicate concerns

14  under the Sixth Amendment.  *See Wheat*, 486 U.S. at 159.  The Sixth Amendment

15  only guarantees criminal defendants the right to effective representation.  *Id.* (stating

16  "[W]hile the right to select and be represented by one's preferred attorney is

17  comprehended by the Sixth Amendment, the essential aim of the Amendment is to

18  guarantee an effective advocate for each criminal defendant rather than to ensure that

19  a defendant will inexorably be represented by a lawyer whom he prefers.") Therefore,

20  Defendants who are unable to hire a lawyer of their choice have no cognizable

21  complaint when they are adequately represented by a court-appointed attorney.  *Id.*

22  (explaining "[A] defendant may not insist on representation by an attorney he cannot

23  afford.")   Accordingly, the trial court's denial of Hutchings' motion for release of

24  funds to pay for his criminal defense did not involve an unreasonable application of

25  clearly established federal law.  Moreover, the failure of Hutchings' appellate counsel

26  to raise this meritless issue on appeal did not constitute ineffective assistance of

27  counsel.  **IT IS THEREFORE RECOMMENDED** that habeas relief as to

28

1   Petitioner's claim that his Sixth Amendment to counsel was violated upon the trial

2   court's denial of his motion for release of funds be **DENIED**.

3          *b. Claim Two - The Sixth and Fourteenth Amendment Right to an*

4   *Impartial Jury and The Trial Court's Denial of a Defense Motion for Mistrial*

5   *Following Comments Expressed by a Prospective Juror During Voir Dire.*

6          Hutchings alleges biased comments made by several prospective jurors during

7   voir dire contaminated the jury that was ultimately impaneled.   ECF No. 1 at 33-36.

8   Petitioner raised this claim in his petition for writ of habeas corpus to the California

9   Court of Appeal and California Supreme Court. (Lodg. Nos. 19 and 21.)  The state

10   appellate court rejected these claims for failure to raise them on direct appeal.  [Lodg.

11   No. 16.]  The state supreme court summarily denied the petition. (Lodg. No. 22.)

12   Accordingly, because there is no reasoned state court decision to which this court can

13   defer, this court must conduct an independent review of the record to determine

14   whether the state court's decision is contrary to, or an unreasonable application of,

15   clearly established Supreme Court law.  *See Himes*, 336 F.3d at 853.

16          The comments that form the basis of Hutchings' claim were made by

17   prospective Juror No. 22 during voir dire and prompted defense counsel to make a

18   motion for mistrial on the ground that the opinions of prospective Juror No. 22

19   prejudiced the jury against the defendant. [Lodg. No. 3, 3 RT Voir Dire 230-31.]  The

20   statements of Juror No. 22 arose as a result of the following discussion on January 26,

21   2010, between Deputy Alternate Public Defender Frank Birchak and various

22   prospective jurors:

23          Mr. Birchak:  Thank you, your Honor.  Good afternoon.  My name is Frank
24          Birchak.  I'm with the alternate public defender's office, and my client is
             William Hutchings.  What I'd like to start out talking about are some of the sort
25          of general issues I think will come up and come up in most criminal cases.  If
             I'm not talking loud enough or my questions don't make sense, please stop me.
26          Please say, "Hey, I'm not sure what you're saying."  I guess one of the biggest
             issues I think everybody here is probably thinking about is the length of this
27          case, and I know I'm thinking about that, and Juror No. 39 and Juror No. 34
             address the number of counts in this case, and that's something I want to ask

28

1   about in a little bit more detail.  The actual number of counts is 165 counts.  I
    heard a bunch of different numbers tossed around, and I just wanted to lay that
2   out there.  Juror No. 39, Hearing that it's even more than you thought it would
    be, does that change your opinion at all?
3
    Prospective Juror No. 39:  Yeah, but not in a better way though.
4
    Mr. Birchak:  Okay.  Why?
5
    Prospective Juror No. 39:  Like you said, they're all accusations, so assuming
6   that, it seemed like – he had a good metaphor, the white duck's a white duck or
    whatever.  I mean, if it was a single incident, then I would have no prejudice, no
7   assumptions, but I don't know if that's 165 different people, but – I don't think
    so, but it just seems like two – it didn't happen one time, it was a recurring
8   thing, whether it was –

9   The Court: Well, what if it was – instead of just 165 people, what if the
    prosecution is saying it was actually 300 or 400?  Would that affect you even
10  more?

11  Prospective Juror No. 39: Yeah, that would make it even worse in my mind.

12  The Court:   Does anyone else feel similarly about Juror No. 39's comments?
    [After which Juror Nos. 28, 29, 54, 55, 35, 36, 39, 14, 17 and 4 indicated the
13  large number of counts against Defendant would make it difficult for them to be
    fair.]
14
                                        ***
15
    Mr. Birchak:  Now, Juror No. 20, you didn't raise your hand.  Do you think you
16  can set aside the sheer volume of counts and supposed victims?

17  Seated Juror No. 20: Yeah, I do. I've always believed that an individual has the
    right to sit and be able to explain or have their attorney's explain the situation,
18  but sometimes – When I see that many, it seems that somebody was doing
    something wrong, and he might not have been aware of exactly what he was
19  doing wrong.  He might have believed in something, the way the system was set
    up, that he truly might have believed that he would have been able to help these
20  people, but it didn't turn out that way.

21  The Court:  And I think that's a very good point.  Part of what I think this case
    is going to be about is what Mr. Hutchings' intent and his belief was.  Does
22  anybody feel they will have a problem trying to determine what somebody's
    belief and intent actually was?  Juror No. 22.
23
    **Prospective Juror No. 22: I know how much time and effort and work it is**
24  **to find witnesses, interview the witnesses, put it down on a [sic] results or**
    **interview and then convincing the prosecutor this is what he did, and when**
25  **you get to the number 165ᵗʰ count, then you've already – there's a pattern**
    **here, there's a history, there's a track record, and in my 25 years of doing**
26  **criminal work, it's easy to find the intent if you get to 165 counts.**

27
    Lodg. No. 3, 2 RT Voir Dire 198:11-202:11(emphasis added).
28

                                        -19-                                    13cv1149

On January 27, 2010, the day after Juror No. 22 commented that the large number of counts may reveal a pattern and practice indicative of criminal intent, defense counsel made a motion for mistrial.  Defense counsel argued Juror No. 22's remarks prejudiced the jury against defendant in terms of the presumption of innocence and the burden of proof.    [Lodg. No. 3, 3 RT Voir Dire 230:12-27.]  The Court denied the motion stating:

> "I appreciate the request and the motion for mistrial.  I believe, however, that it does not rise to that level of tainting the jury such that Mr. Hutchings' constitutional and statutory rights to a fair and unbiased panel have been adversely affected.  I believe that the opinions expressed by Juror No. 22 – and if my recollection serves me correctly, he has a long law enforcement history as well as currently working with ... the city attorney's office.....I believe that there was further follow-up questions with other jurors in response to that, and I'm confident that based on what I've heard so far from this panel, that we will be successful in obtaining a collection of fair and unbiased jurors that understand the law and appreciate the presumptions of innocence and the obligation of the people to prove the allegations beyond a reasonable doubt.  So that motion is denied."

Lodg. No. 3, 3 RT Voir Dire 231:13-22.

Although the trial judge did not grant the motion for mistrial, the court nevertheless did find cause to dismiss Juror No. 22 later that same day as requested by defense counsel. [Lodg. No. 3, 3 RT Voir Dire 302:4-5.]

The Sixth and Fourteenth Amendments guarantee a fair trial to the criminally accused by a panel of impartial jurors.  U.S. Const. Amends. VI and XIV; *see also Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)); *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961).  However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation.  *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L.Ed.2d 78 (1982).  The Supreme Court in *Smith* stated:

> "Were that the rule, few trials would be constitutionally acceptable.  The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.  Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."

13cv1149

1  *Id.*

2      Here, Juror No. 22 was dismissed for cause from jury service and therefore did

3  not sit as a juror for Petitioner's trial. [Lodg. No. 3, 3 RT Voir Dire 302:4-5.]  The

4  jurors who actually served on Petitioner's trial are presumed to be impartial.  *Irvin*,

5  366 U.S. at 723.  These jurors are also presumed to have followed the trial court's

6  instructions.  *Penry v. Johnson*, 532 U.S. 782, 789, 121 S. Ct. 1910, 150 L. Ed.2d 9

7  (2001).   Before deliberations began, the Court instructed the jury that the People had

8  the burden of proving the allegations against Hutchings beyond a reasonable doubt

9  and that if the People failed to meet its burden, the jury must find the allegations were

10  not proved. [Lodg. No. 3, 25 RT 4629:16-4634:3.]  The Petitioner has failed to

11  produce any evidence that the jurors who were actually impaneled did not follow the

12  Court's instructions concerning the presumptions of innocence and the obligation of

13  the People to prove the allegations beyond a reasonable doubt.   Accordingly, the trial

14  court's denial of Defendant's motion for mistrial based on juror bias did not involve

15  an unreasonable application of clearly established federal law.  Moreover, the failure

16  of Hutchings' appellate counsel to raise this meritless issue on appeal did not

17  constitute ineffective assistance of counsel.  **IT IS THEREFORE**

18  **RECOMMENDED** that habeas relief on Petitioner's claim that his Sixth and

19  Fourteenth Amendment rights to an impartial jury were violated be **DENIED**.

20          *c. Claim Three - The Sixth and Fourteenth Amendment Right to A Fair*

21          *Trial And the Trial Court's Alleged Exclusion of Defense Evidence*

22      Hutchings alleges the trial court's exclusion of defense evidence as well as its

23  distribution of candy to jurors each day after lunch violated his Sixth and Fourteenth

24  Amendment rights to a fair trial   [ECF No. 1 at 41-42.]   Petitioner raised this claim in

25  a petition for writ of habeas corpus to the California Court of Appeal and California

26  Supreme Court.  [Lodg. Nos. 19 and 21.]  The state appellate court rejected these

27  claims for failure to raise them on direct appeal.  [Lodg. No. 16.]  The state supreme

28

court summarily denied the petition.  [Lodg. No. 22.]  Accordingly, because there is

no reasoned state court decision to which this court can defer, this court must conduct

an independent review of the record to determine whether the state court's decision is

contrary to, or an unreasonable application of, clearly established Supreme Court law.

*See Himes*, 336 F.3d at 853.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to

present a complete defense.' "  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation

omitted); *see Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009) (the right to present a

complete defense "stems both from the right to due process provided by the

Fourteenth Amendment . . . and from the right 'to have compulsory process for

obtaining witnesses in his favor' provided by the Sixth Amendment") (citations

omitted).  However, "countervailing public interests" qualify trial rights.  *Taylor v.*

*Illinois*, 484 U.S. 400, 414 (1988); *Moses*, 555 F.3d at 757 (" 'a defendant's right to

present relevant evidence is not unlimited, but rather is subject to reasonable

restrictions,' such as evidentiary and procedural rules"), *quoting United States v.*

*Scheffer*, 523 U.S. 303, 308 (1998) ("state and federal rulemakers have broad latitude

under the Constitution to establish rules excluding evidence from criminal trials").

"Such rules do not abridge an accused's right to present a defense so long as they are

not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' "

*Scheffer*, 523 U.S. at 308, 309-15 (citations omitted).

When evidence is excluded through the valid application of a state evidentiary

rule, a due process violation requires a showing that the excluded evidence was

sufficiently trustworthy and crucial to the defense.  *Chambers v. Mississippi*, 410 U.S.

284, 302 (1973).  However, Hutchings does not identify anywhere in his Petition the

specific evidence he contends was excluded by the trial court.  Hutchings also fails to

explain why this excluded evidence was crucial to his defense.  Under clearly

established federal law, a state court's evidentiary ruling is not subject to federal

habeas review *unless* the ruling violates federal law by infringing upon a specific constitutional or federal statutory provision or by depriving the defendant of a fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir.1991). Petitioner has failed to show the exclusion of defense evidence he has not identified rendered his trial fundamentally unfair.  Similarly, Petitioner has failed to show, and a review of the trial court record does not support, a finding that the trial court's offering of candy to jurors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 636, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993).   Accordingly, the trial court's rulings did not involve an unreasonable application of clearly established federal law.  Moreover, the failure of Hutchings' appellate counsel to raise this meritless issue on appeal did not constitute ineffective assistance of counsel.   **IT IS THEREFORE RECOMMENDED** that habeas relief on Petitioner's claim that his Sixth and Fourteenth Amendment rights to a fair trial be **DENIED**.

   *d.  Claim Four -Ineffective Assistant of Trial Counsel by failing to investigate, failing to introduce certain evidence, failing to call expert witnesses, failing to object to evidence and failing to request a rehearing on a motion for mistrial*

   The Court will further address Petitioner's Ineffective Assistance of Trial Counsel Claim after its analysis of the merits of Claims One, Two, Three, Five and Six and whether these claims are procedurally defaulted.  *See e.g. Cockett v. Ray*, 333 F.3d 938, 943-44 (9th Cir. 2003)(explaining that in order for an alleged ineffective assistance of counsel claim to constitute the requisite "cause" for a procedural default, the petitioner must satisfy both *Strickland* prongs: deficient performance and prejudice.  Specifically, Petitioner must show counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."  *Smith*, 528 U.S. at 285.

13cv1149

*e. Claim Five - The Sixth Amendment Right to A Jury Trial And the Trial Court's Imposition of Consecutive Sentences*

Hutchings alleges the trial court's imposition of 63 consecutive sentences totaling 46 years was an abuse of discretion in violation of his Sixth Amendment rights. [ECF No. 1 at 47-51.] Specifically, Hutchings argues the trial court improperly imposed consecutive sentences lengthening his sentence based on facts not found by the jury, in violation of *Cunningham v. California*, 549 U.S. 270 (2007) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). [ECF No. 1 at 51.] Petitioner raised this claim in a petition for writ of habeas corpus to the California Court of Appeal and California Supreme Court. (Lodg. Nos. 19 and 21.) The state appellate court rejected these claims for failure to raise them on direct appeal. [Lodg. No. 16.] The state supreme court summarily denied the petition. [Lodg. No. 22.] Accordingly, because there is no reasoned state court decision to which this court can defer, this court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes*, 336 F.3d at 853.

In 2007, the *Cunningham* Court invalidated the portion of California's determinate sentencing law that authorized a judge, rather than the jury, to find facts exposing a defendant to an upper-term sentence stating:

"[U]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [beyond the prescribed statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence."

*See Cunningham,* 549 U.S. at 281, *citing, inter alia, Apprendi*, 530 U.S. 466, 489 (2000) (same, "[o]ther than the fact of a prior conviction"); *see Blakely v. Washington*, 542 U.S. 296, 305-08 (2004).

However, the United States Supreme Court later held the choice to impose consecutive, rather than concurrent sentences, does <u>not</u> violate a defendant's Sixth Amendment right to a jury trial. *See Oregon v. Ice*, 555 U.S. 160, 168-69 (2009).

When, as in California, the state "constrain[s] judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences," the Sixth Amendment does not preclude a state from entrusting that decision to judges, rather than to juries, because the "twin considerations – historical practice and respect for state sovereignty – counsel against extending *Apprendi*'s rule to the imposition of sentences for discrete crimes." *Ice,* 555 U.S. at 163-64, 168.

Accordingly, the trial court's decision to impose consecutive, rather than concurrent, sentences is not contrary to nor an unreasonable application of United States Supreme Court authority.  28 U.S.C. § 2254(a),(d).  As Respondent argues, Hutchings' challenge to the imposition of consecutive sentences is not a claim for which federal habeas relief can be granted.  Moreover, the failure of Hutchings' appellate counsel to raise this meritless issue on appeal did not constitute ineffective assistance of counsel.  **IT IS THEREFORE RECOMMENDED** habeas relief on Claim Five be **DENIED**.

> *F.  Claim Six - The Sixth and Fourteenth Amendment Right to Present a Defense And the Trial Court's Denial of Hutching's "Land Grant Program" Jury Instruction*

Hutchings alleges the trial court's denial of his proposed jury instruction regarding the legitimacy of his "land grant program" violated his Sixth and Fourteenth Amendment rights to present a defense. [ECF No. 1 at 52-55.]  Petitioner raised this claim in a petition for writ of habeas corpus to the California Court of Appeal and California Supreme Court. [Lodg. Nos. 19 and 21.]  The state appellate court rejected these claims for failure to raise them on direct appeal. [Lodg. No. 16.] The state supreme court summarily denied the petition. [Lodg. No. 22.]  Accordingly, because there is no reasoned state court decision to which this court can defer, this court must conduct an independent review of the record to determine whether the state court's

decision is contrary to, or an unreasonable application of, clearly established Supreme

Court law.  *See Himes*, 336 F.3d at 853.

In general, a jury instruction error does not state a federal constitutional claim.

*Engle v. Isaac*, 456 U.S. 107 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th

Cir. 1983).   An error in a trial proceeding must implicate "fundamental fairness" to

constitute a due process violation.  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991); *see*

*Calderon v. Coleman*, 525 U.S. 141, 145 (1998) ("a federal court may grant habeas

relief based on trial error only when that error 'had substantial and injurious effect or

influence in determining the jury's verdict' "), *quoting Brecht v. Abrahamson,* 507

U.S. 619, 637, 638 (1993). The fundamental fairness standard in the jury instruction

context requires criminal defendants be afforded a meaningful opportunity to present a

complete defense.  *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Mathews v.*

*United States*, 485 U.S. 58, 63 (1988) ("As a general proposition, a defendant is

entitled to an instruction as to any recognized defense for which there exists evidence

sufficient for a reasonable jury to find in his favor"); *see Bradley v. Duncan*, 315 F.3d

1091, 1096, 1098-99 (9th Cir. 2002) ("the state court's failure to correctly instruct the

jury on [a] defense may deprive the defendant of his due process right to present a

defense," and "[d]oubts as to the sufficiency of the evidence to warrant instructions

should be resolved in favor of the accused") (citation omitted).  More specifically, "[a]

defendant is entitled to an instruction on his theory of the case 'provided that it is

supported by law and has some foundation in evidence.' " *United States v. Del Muro*,

87 F.3d 1078, 1081 (9th Cir.1996) (citation omitted); *see Duckett v. Godinez*, 67 F.3d

734, 745 (9th Cir.1995) ("Whether a constitutional violation has occurred will depend

on the evidence in the case and the overall instructions given to the jury"), *citing Cupp*

*v. Naughten*, 414 U.S. 141, 147 (1973).

As noted above, federal habeas relief is available only when "'the ailing

instruction by itself so infected the entire trial that the resulting conviction violates

due process.' "  *Estelle*, 502 U.S. at 72, *quoting Cupp*, 414 U.S. at 147.  To make that

determination, courts must examine the adequacy of the instructions in their totality as

actually given.  *Henderson v. Kibbe*, 431 U.S. 145, 154-156 (1977); *see Estelle*, 502

U.S. at 72.  A defendant receives due process as long as the trial judge gives jury

instructions that adequately convey the defendant's theory of the case.  *United States*

*v. Romm*, 455 F.3d 990, 1002 (9th Cir.2006); *United States v. Mason*, 902 F.2d 1434,

1438 (9th Cir.1990) (even if an instruction was requested and rejected by the trial

court, "it is not reversible error to reject a defendant's proposed instruction on his

theory of the case if other instructions, in their entirety, adequately cover that defense

theory"); *see United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979).

Here, Hutchings' defense to the charges against him centered on his argument

that research led him to believe in the validity of the "land grant program"; therefore,

he did not have the intent to defraud.   [ECF No. 1 at 54.]  In support of his theory of

the case, Hutchings submitted the following proposed jury instruction to the trial

court:

> "The 'land grant programs' described during this trial aren't proven.  There is
> case law that has been reviewed and relied upon that is still current."

[Lodg. No. 3 at 3 RT Vol. 23, 4414.]

The trial court rejected Hutchings' proposed jury instruction explaining the

reasoning behind the ruling in the following discussion with Hutchings, who appeared

*in pro per,* and Mr. LaFond, counsel for the prosecution:

> The Court: ....Mr. Hutchings, I do not believe [the proposed jury instruction] is
> an accurate statement of the law.  Mr. La Fond?
>
> Mr. La Fond: I agree, your Honor.
>
> The Court: What would you like to place on the record?
>
> Mr. Hutchings: Your Honor, it's the heart of the case from my point of view.
> Excuse me.
>
> The Court: No, I'm listening, Mr. Hutchings.  I understand it's the heart of the
> case.  That is what the issue is isn't it?

Mr. Hutchings: It is.

The Court: There isn't law to support this.

Mr. Hutchings: Your Honor, I had cases I used shepardized by an attorney who tells me those are still good law. That was the way it was back then, and it's still that way today.

The Court: Those cases don't relate whatsoever to the issues that have been presented in this trial, Mr. Hutchings.

Mr. Hutchings: You can't tell me my options. Your Honor I disagree. I completely and fully – I want to be as articulate and emphatic as I can be with all honor and respect to yourself.

The Court: I absolutely understand that. You're doing an excellent job. You and I obviously have a significant disagreement on this issue, and it is obvious from the – all that has come before this conversation that you and I are having now on the record that you have this position and it, from my perspective, is not consistent with the law. There is no law to support that position. I can appreciate that from your perspective this is the heart of the case. The issue from my perspective as to the heart of the case is your intent and what your knowledge is or is not as it relates to those issues. The fact is case law, everything that I have reviewed and seen, is that your – there isn't anything to support the program from a legal standpoint that you have been accused of creating.

Mr. Hutchings: Not even those cases I cited?

The Court: That's correct.

Mr. Hutchings: Just give me a second here to collect my thoughts.

(Pause in the proceedings.)

Mr. Hutchings: If I was just told on March 3rd by an attorney who did shepardizing that the cases go specifically to the point, I believe it now, as I did then, as a reference point.

The Court: Mr. Hutchings, I have no idea what you were told on March 3rd by an attorney that said he shepardized the cases.

Mr. Hutchings: In closing, your Honor, can I discuss those cases?

The Court: Mr. La Fond?

Mr. La Fond: Well, your Honor, first of all, it makes some factual statements that these land grant programs described during this trial are unproven. There's been no evidence adduced in this trial that says that these land grant programs are unproven. It's been just the opposite: They've been proven not to work. So even as a pure factual question, there's no evidence in the record to support that. The second part of the instruction, there is case law that has been reviewed and relied upon that is still current, but that's a factual question, I

13cv1149

suppose, and Mr. Hutchings has testified to those propositions, but really the heart of the issue is whether the land grant program is legal or not, and the jury should not be confused into believing that there's some question about that when there is no question.

The Court: Mr. Hutchings?

Mr. Hutchings: So where does it say they're illegal?  I mean, we're not – I'm sorry.  If I can finish connecting the thought.

(Pause in the proceedings.)

Mr. Hutchings: The charges – I don't know what to say, your Honor.   In referencing cases that I believe went to the point, there's no document that ever said that the land grant program is illegal.  Now, there's no document that said it's legal.

The Court: Mr. Hutchings, there's no legal support for the land grant programs, as they've been – as the evidence – that has been presented as to those programs in this trial, there is no legal support for that.  I can't be more emphatic or clear than that.

Mr. Hutchings: I understand your Honor.

The Court: It's unequivocal, and whatever was told or whatever you believed as it relates to cases out there, that's an issue as going to your intent and your mind-set in this, but it doesn't go to the issue of whether or not the programs described during this trial are legal because there is no case law that says that.

Mr. Hutchings: Again, I just ask this – probably very naively, in the process couldn't you or Mr. La Fond confirm that those cases are, in fact, valid cases?

The Court: I think the way in which, and correct me if I'm wrong, you are making a statement as to whether or not they're valid cases might not be relevant and is probably not relevant to the issue which is you want them to support, from a legal standpoint, the program that has been part of this trial.  They do not support – legally support the program that's been described in this trial.  The case might still be good law, but that doesn't mean that they support this program that's been described in this trial."

[Lodg. No. 3 at 3 RT Vol 23, 4414:13 - 4418:3.]

     "A defendant is entitled to an instruction on his theory of the case 'provided that it is supported by law and has some foundation in evidence.' " *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir.1996) (citation omitted); *see Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir.1995).  Here, Mr. Hutchings' land grant program was not supported by state or federal law.  As the trial court cogently explained,

the shepardized status of the cases cited by Hutchings to support the program was irrelevant and of no assistance in determining whether Hutching's proposed jury instruction was acceptable because the substance of the case law did not support the land grant program he devised.  Moreover, Mr. Hutchings produced no evidence during trial of a property in his land grant program that was shielded from foreclosure as he had represented.  Accordingly, the trial court rejected Hutchings' proposed jury instruction and gave the prosecution's proposed instruction in order "to avoid jury confusion as well as to direct [the jury] in the issues that they are to decide as it relates to the guilt or innocence of Mr. Hutchings."  [Lodg. No. 3 at 3 RT Vol 23, 4418:21-26.]  The jury instruction given was as follows:

"The land grant programs described during this trial are invalid and unsupported by federal and state law."

[Lodg. No. 3 at 3 RT Vol 23, 4413:15-21, 4418:21-22.]

The rejection of Hutchings' proposed jury instruction notwithstanding, the record demonstrates Petitioner was still able to present his theory of the case on direct examination.  Specifically, Hutchings provided narrative testimony on direct examination which detailed the time he spent researching land grants and his intent in developing a land grant program.  [Lodg. No. 3 at 3 RT Vol 21, 3961:15-3962:5; 3976:12-3980:13; 3993:19-4021:23.]  Upon consideration of the totality of evidence presented by the parties and the jury instructions actually given, Hutchings has failed to establish the "land grant program" jury instruction delivered by the trial court was incorrect or had a substantial or injurious influence on the jury's verdict. Accordingly, the trial court's rejection of Hutching's proposed jury instruction did not involve an unreasonable application of clearly established federal law.  Moreover, the failure of Hutchings' appellate counsel to raise this meritless issue on appeal did not constitute ineffective assistance of counsel.  **IT IS THEREFORE RECOMMENDED** the Court find habeas relief on Claim Six  be **DENIED**.

13cv1149

**IT IS FURTHER RECOMMENDED** that because Petitioner's claims one, two, three, five and six fail on the merits as explained in the subsections above, his appellate counsel did not render ineffective assistance of counsel in failing to raise these claims on direct appeal.  As a result, Petitioner has also failed to demonstrate cause for the procedural default in state court.  Accordingly, claims one, two, three, five and six should be found procedurally defaulted, with federal habeas relief **DENIED**.

**B.  Ineffective Assistant of Trial Counsel Claim**

In his fourth claim, which is not procedurally defaulted, Petitioner claims his trial counsel was ineffective for failing to investigate, failing to introduce certain evidence, failing to call expert witnesses, failing to object to evidence and failing to request a rehearing on a motion for mistrial.  Hutchings is referring to his prior appointed counsel, Frank Birchak, who represented Hutchings until he asserted his right to represent himself after approximately four weeks of trial. *See* Hutchings v, Superior Court, No. D056871, 2010 WL 703209, *1-3 (Cal. App. 4 Dist. Mar. 1, 2010). [Lodg. No. 1; Lodg. No. 2 at 5 CT 877-878.]   Initially, the trial court denied Hutchings' motion to represent himself. [Lodg. No. 3 at 5 CT 871-873.]  However, Hutchings filed a preemptory writ with the California Court of Appeal which granted the writ and ordered the state superior court to grant the motion for self-representation under *Faretta v. California*, 422 U.S. 806 (1975).  The state appellate court stated:

"The factual circumstances of this case are markedly different than those we ordinarily encounter on a *Faretta* motion.  The [trial] court here conceded there was no question about the quality of attorney Birchal's performance, no history of changing counsel, and no reason to believe Hutchings would behave in a disruptive manner.  The court recognized that Hutchings had made the request because of a tactical disagreement with counsel over the selection of witnesses, he was competent to represent himself within the meaning of the law, and he was prepared to proceed.  Because Hutchings had a legitimate reason to request self-representation, he was not seeking a continuance, and there is nothing in this record to indicate there would be any delay, the [*Faretta*] motion should have been granted.

It appears the reason for the denial lies in the court's oblique reference to disruption in terms of confusion and prejudice, i.e. that the jury was accustomed

1
2
3
4
5
6
7

> to seeing attorney Birchak represent Hutchings and the change to self-representation at this juncture would cause possible confusion and raise the potential for disruption.  The statement suggests a veiled concern that jurors might impute negative implications to Hutchings and the strength of his case by virtue of the attorney's withdrawal.  However, the wisdom of a defendant's decision to represent himself or herself is not directly before the court.  *(See People v. Windham*, 19 Cal. 3d. 121, 128 (1977).  That issue is one for the defendant and the defendant alone and one that most courts would strongly recommend against.  Attendant misgivings about confusion and prejudice can, and should, be quelled by an admonishment that the defendant has a right to represent himself, the court granted his motion for self-representation, and the jurors are not to consider or draw any inference from the fact or let it influence them in any way."

8
9

*Id*. at-*2-3.

10
11
12
13

As the basis for his ineffective assistance of trial counsel claim, Hutchings contends his appointed counsel was fixated on persuading him to accept an 8-year plea agreement offered by the prosecutor and would not accept the trial strategy, case law, evidence or supporting documents that Hutchings proposed.  [ECF No. 1 at 43-44.]

14
15
16
17
18
19
20
21
22

On February 28, 2012, Hutchings filed a Petition for Writ of Habeas Corpus in the California Superior Court for the County of San Diego alleging the same ineffective assistance of trial counsel claim now raised in the instant petition. [Lodg. No. 10 at 1-24.]  On March 28, 2012, the San Diego Superior Court issued an Order denying Hutchings' Petition for Writ of Habeas Corpus for "fail[ing] to provide **any** evidence to substantiate any of the five grounds   [Petitioner] raise[d] as reasons to grant th[e] petition.]" [Lodg. No. 11 at 3:13-14.]  As to Hutchings ineffective assistance of counsel claim, specifically, the superior court concluded:

23
24
25
26

> "Here, as noted above, petitioner fails to present any evidence to support his mere conclusory claims that trial counsel's inadequate investigation, 'failure to introduce evidence vital to [his] defense, failure to call expert witnesses supporting [his] defense, failure to object to improperly admitted evidence by the prosecution and failure to object to improperly admitted evidence by the prosecution and failure to request a rehearing for motion for mistrial' led to the jury's finding of guilty.  On the contrary, petitioner's claims fail to overcome what the appellate court stated on page 11 of its decision affirming the judgment against him: 'the evidence against Hutchings was abundant.'"

27
28

13cv1149

1   [Lodg. No. 11 at 5.]

2       The state appellate court rejected Petitioner's ineffective assistance of counsel

3   claim as conclusory. [Lodg. No. 16.] The state supreme court summarily denied the

4   habeas petition. [Lodg. No. 22.] Accordingly, because there is no reasoned state

5   court decision to which this court can defer, this court must conduct an independent

6   review of the record to determine whether the state court's decision is contrary to, or

7   an unreasonable application of, clearly established Supreme Court law. *See Himes*,

8   336 F.3d at 853.

9       To prevail on a claim of ineffective assistance of trial counsel, Hutchings must

10  show "counsel made errors so serious that counsel was not functioning as the

11  'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v.*

12  *Washington*, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance

13  must be "highly deferential." *Id.* at 689. Second, he must show counsel's deficient

14  performance prejudiced the defense, such that the result of the proceeding would have

15  been different absent counsel's errors. *Id.* at 687. The Court need not address the

16  performance prong if the claim can be resolved on the ground of lack of sufficient

17  prejudice. *Strickland*, 466 U.S. at 697.

18      Hutchings has not established what helpful evidence defense counsel would

19  have discovered had he conducted additional investigations or called the expert

20  witnesses Hutchings' recommended. *Strickland*, 466 U.S. at 687, 689. Nor has

21  Hutchings shown appointed counsel did not have a strategic reason for not pursuing

22  the defense tactics proposed by Hutchings. *See Harrington v. Richter*, 562 U.S. __,

23  131 S. Ct. 770, 788 (2011) (stating that on federal habeas review, the question is

24  whether there is "any reasonable argument that counsel satisfied *Strickland*'s

25  deferential standard"). Conclusory allegations cannot form the basis for federal

26  habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

27

28

13cv1149

Hutchings does argue Attorney Birchak was deficient by: (1) failing to request a rehearing on his motion for mistrial, which was denied, or by (2) bringing a second motion for mistrial.  [Lodg. No. 1 at 44.]   Because the Court concluded above in section V of this Report and Recommendation that the trial court's denial of Defendant's motion for mistrial based on juror bias did not involve an unreasonable application of clearly established federal law, counsel cannot be said to have been ineffective for failing to request a rehearing.  *See James James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (stating that "[c]ounsel's failure to make a futile motion does not constitute ineffective assistance of counsel").

Hutchings also argues Attorney Birchak's performance was deficient when he failed to object to a prejudicial  "power point photo presentation of 400 plus alleged victims" by the prosecution.  [Lodg. No. 1 at 44.]  Even assuming trail counsel's failure to object to a power point presentation of Hutchings' alleged victims was deficient, Petitioner has not demonstrated he was prejudiced by his trial counsel's failure to object.  *See* Strickland 466 U.S. at 697.  As noted by the California Court of Appeal on direct review and the  California Superior Court for the County of San Diego on collateral review, the evidence of Petitioner's guilt was strong.  At trial, testimony of more than 60 victims was presented.  [Lodg. No. 3 at 3 RT Vol 4 at 423:15 - Vol 19 at 3630:17.]  Thus, Hutchings has not demonstrated that, but for his trial counsel's failure to object to the powerpoint presentation, there is a reasonable probability the result of the trial would have been different.  Accordingly, the State courts' rejection of Hutching's ineffective assistance of trial counsel claim was neither contrary to nor involved an unreasonable application of clearly established federal law.  **IT IS THEREFORE RECOMMENDED** the Court find habeas relief on Claim Four be **DENIED**.

///

**C.**     <u>**Request for an Evidentiary Hearing**</u>

        In Hutchings' Traverse, he contends he is entitled to an evidentiary hearing on his claims. (*See* Traverse at p. 2, ECF No. 22.)  Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999).  The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e) (2)(West 2006).

        The Ninth Circuit has outlined the procedure for deciding whether to grant a request for an evidentiary hearing.  First, the court must "determine whether a factual basis exists in the record to support the petitioner's claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (citing *Baja*, 187 F.3d at 1078).  If not, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id.* at 669-70.  A failure to develop the factual basis of a claim in state court implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See Williams v. Taylor*, 529 U.S. 420, 432 (2000). The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner

1  prescribed by state law." *Id.* at 437.  If the petitioner has failed to develop the factual

2  basis for his claim in state court, "the court must deny a hearing unless the applicant

3  establishes one of the two narrow exceptions set forth in section 2254(e)(2)(A) &

4  (B)." *Insyxiengmay*, 403 F.3d at 669-70.

5       If, however, the petitioner "has not 'failed to develop' the facts in state court,

6  the district court may proceed to consider whether a hearing is appropriate, or required

7  under *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)]." *Id.* at

8  670.  In *Townsend*, the Court identified six situations in which a habeas petitioner

9  would be entitled to an evidentiary hearing:

10       (1) [T]he merits of the factual dispute were not resolved in the state
        hearing; (2) the state factual determination is not fairly supported by the

11       record; (3) the fact-finding procedure employed by the state court was not
        adequate to afford a full and fair hearing; (4) there is a substantial

12       allegation of newly discovered evidence; (5) the material facts were not
        adequately developed at the state-court hearing; or (6) for any reason it

13       appears that state trier of fact did not afford the habeas applicant a full
        and fair fact hearing.

14  *Townsend*, 372 U.S. at 313.

15       Thus, if a petitioner has not failed to develop the factual basis for his claim, he

16  is entitled to an evidentiary hearing in federal court if he meets one of the *Townsend*

17  factors and makes allegations which, if true, would entitle him to relief.  *See*

18  *Insyxiengmay*, 403 F.3d at 670; *see also Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th

19  Cir. 2003).

20       In the present case, a sufficient factual basis exists in the record.  The

21  voluminous trial transcripts provide enough information for the Court to resolve the

22  merits of Hutchings' claims.  *See Insyxiengmay*, 403 F.3d at 669-70.  Accordingly**, IT**

23  **IS RECOMMENDED** Hutchings' request for an evidentiary hearing be **DENIED**.

24             **VI.  CONCLUSION AND RECOMMENDATION**

25       The Court submits this Report and Recommendation to United States District

26  Judge Roger T. Benitez under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the

27  United States District Court for the Southern District of California.  For all the

28

13cv1149

foregoing reasons, **IT IS HEREBY RECOMMENDED** this habeas Petition be **DENIED** in its entirety on grounds the Petitioner procedurally defaulted his federal claims in the state courts except Claim Four, and even if he had not, all of his federal claims are without merit.  **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

      **IT IS HEREBY ORDERED** no later than **January 17, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

      **IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than fourteen (14) days from service of Petitioner's filed Objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

      **IT IS SO ORDERED.**

DATED: December 30, 2013

Hon. William McCurine, Jr.
U.S. Magistrate Judge
U.S. District Court

13cv1149